**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| ENDURANCE AMERICAN INSURANCE COMPANY | CIVIL ACTION NO. 20-0571 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHEYENNE PARTNERS, LLC, ET AL. | MAGISTRATE JUDGE AYO |

**MEMORANDUM RULING**

Before the Court are two motions filed by QBE Insurance Corporation ("QBE"). See Record Document 716 & 717. The first is QBE's Motion for Partial Summary Judgment on "Conspiracy" Claims Pursuant to Civil Code Article 2324. See Record Document 716. QBE seeks dismissal of all claims for "civil conspiracy" under Article 2324 that have been alleged by all Cross-Claimants in this matter. See id.[1] The second is QBE's Motion for Summary Judgment arguing that Cross-Claimants cannot show any genuine issue of material fact to establish they will satisfy their burden of proving coverage under the QBE insurance policy. See Record Document 717. Cross-Claimants, Mignone Denay Crisp, individually and in her capacity as Administratrix for the Estate of Robert Vaughn Crisp II, Stephen Wade Berzas, individually and on behalf of his two minor children C.B. and K.B., Mackenzie Berzas, Mckenzie Ruby Berzas, Gabrielle Claire Berzas, Kristie Danielle Britt and Robert E. Britt, Jr., individually and on behalf of their minor son R.E.B., Andy Truxillo, and Steven Ensminger, Jr. (collectively "Cross-

---

[1] Southern Lifestyle Development Company, LLC, SLD Aircraft, LLC, Rodney L. Savoy, RRCo Aircraft, LLC, Parkside Properties, LLC, RR Company of America, LLC, and Robert Daigle joined in QBE's Motion for Partial Summary Judgment on "Conspiracy" Claims Pursuant to Civil Code Art. 2324. See Record Document 720.

Claimants") have opposed both motions. See Record Documents 764 & 763. QBE replied. See Record Documents 772 & 781. For the reasons set forth below, QBE's Motion for Partial Summary Judgment on "Conspiracy" Claims Pursuant to Civil Code Article 2324 is **GRANTED** and QBE's Motion for Summary Judgment as to coverage is **DEFERRED** to trial or – if necessary – to additional post-trial motion practice.

## BACKGROUND

A small airplane, a Piper N42CV (hereinafter referred to as "the Piper"), crashed shortly after takeoff in Lafayette, Louisiana, on December 28, 2019, while headed to the Peach Bowl in Atlanta, Georgia. As a result of the plane crash, the Piper's pilot, Ian E. Biggs ("Biggs"), and four of its five passengers (Robert Vaughn Crisp II, Gretchen Vincent, Michael Vincent, and Carley McCord Ensminger) were killed. The fifth passenger, Stephen Wade Berzas, survived but sustained serious injuries. Another individual on the ground sustained injuries due to the crash, while several others witnessed the crash.

The Cross-Claimants in this case are either survivors of the plane crash or are the wrongful death/survival beneficiaries of persons killed in the accident. There are also claims of other individuals who are alleged to have witnessed the crash and sustained damages. All of these individuals are collectively referred to as Cross-Claimants.

The detailed facts of this case have been set forth in numerous rulings. Here, the Court will focus on the facts pertinent to the instant motion. In 2015, Charles "Chuck" Vincent, a member of Global Data Systems, Inc. ("GDS"), and Rodney Savoy, a member of Southern Lifestyle Development Company, LLC ("SLD"), entered into an agreement to share the use of the Piper. GDS and SLD used the Piper on an as-needed basis. Under the agreement, there was no requirement that either GDS or SLD provide notice to or

seek approval from the other entity before using the Piper. Biggs, the pilot of the Piper, was jointly employed by GDS and SLD. All passengers onboard the Piper on December 28, 2019 were associated with GDS.

The Piper was owned by Cheyenne Partners, LLC ("Cheyenne Partners"), which was comprised of two members – Eagle Air, LLC ("Eagle Air") and SLD Aircraft, LLC ("SLD Aircraft"). Eagle Air was wholly owned by Charles "Chuck" Vincent, while SLD Aircraft was owned by two member-LLCs, including RRCo Aircraft, LLC ("RRCo Aircraft"). Rodney Savoy and Robert Gagnard comprised the members of RRCo Aircraft. QBE issued an Aircraft Policy, Policy No. QAV0004501 (the "QBE Policy"), to RRCo Aircraft, Robert Gagnard, and Rodney Savoy (collectively "the QBE Named Insureds"). See Record Document 717-1 (Policy). The only "Scheduled Aircraft" on the QBE Policy was a King Air aircraft bearing tail number N303RR ("King Air") for the policy period February 28, 2019 to February 28, 2020. See id. at 10. RRCo Aircraft owned the King Air.

The QBE Policy also included coverage provisions for "Coverage 2 – Liability for Use of Non-Owned Aircraft" and "Coverage 4 – Liability for Charter Referral." Id. at 15-16. "Coverage 2 - Liability for the Use of Non-Owned Aircraft" provides:

> The Company will promptly pay on behalf of the "insured", as defined below, all sums which the "insured" becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence during the policy period arising out of the use of non-owned aircraft by or on behalf of the "insured".
>
> A.    For Coverage 2, the definition of "insured":
> ***
> 2.    With respect to all other non-owned aircraft, means:
>
>     a.    The Named Insured and,
>     b.    any officer, director, stockholder, employee, partner, or agent of the Named Insured while that person is acting in their capacity as such.

3

Id. at 15. The insurance provided by Coverage 2 is excess insurance. See id. "Coverage 4 - Liability Coverage for Charter Referral" provides:

> The Company will promptly pay on behalf of the Named Insured all sums the Named Insured becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence and arising out of the Named Insured's arrangement for use of a non- owned aircraft by and on behalf of another person or organization.

Id. at 16.

Cross-Claimants allege, *inter alia*, the Defendants, including the QBE Named Insureds, are jointly and solidarily liable based on claims of civil conspiracy and liability based on the single business enterprise doctrine. QBE has now moved to dismiss the civil conspiracy claims and for a summary judgment finding that Cross-Claimants cannot show any genuine issue of material fact to establish they will satisfy their burden of proving coverage under the QBE insurance policy.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.

2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).  A court may consider pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits when determining whether summary judgment is appropriate. See Fed. R. Civ. P. 56(c).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993).

**II.     Article 2324 Civil Conspiracy.**

Cross-Claimants allege that certain defendants conspired to commit intentional or willful acts which caused the plane crash on December 28, 2019.  See Record Document 622 at ¶¶ 96-98.  More specifically, they submit that "co-conspirators intentionally and/or willfully conspired, in whole or in part, to operate [the] Piper . . . in violation of the Federal Aviation Regulations ("FARs")."  Id. at ¶ 97.  Cross-claimants contend that the co-conspirators' conduct was in furtherance and/or facilitation of the conspiracy to operate the Piper in violation of the FARs.  See id. at ¶ 98.

QBE argues that Cross-Claimants cannot prevail on the civil conspiracy theory because they have not alleged – nor is there any evidence of – a critical missing element, that is, the conspirators conspired and agreed to intentionally and willfully cause the actual accident that occurred on December 28, 2019.  See Record Document 716-1 at 3.

Stated another way, no alleged conspirator-defendant entered into an agreement with any other defendant where the intent of the agreement was to actually cause the airplane crash that occurred on December 28, 2019. See id. at 5.

An independent cause of action for civil conspiracy does not exist in Louisiana. See Able Sec. and Patrol, LLC v. State of La., 569 F.Supp.2d 617, 636 (E.D. La. 2008). "The actionable element of Article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiff's injury." Id. Article 2324(A) provides:

> He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

Such a conspiracy may be proven by circumstantial evidence. See Hall v. Lilly, 29624 (La. App.2d Cir. 06/18/97), 697 So.2d 676, 679. Nevertheless, the plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury. See id. Louisiana courts require "that the agreement between the actors involved in a conspiracy must be an agreement as to the intended outcome or result of their acts." Walker v. Am. Honda Motor Co., 640 So. 2d 794, 797 (La. Ct. App.), writ denied, 94-1741 (La. 10/7/94), 644 So. 2d 644.

As stated previously, "Article 2324 does not by itself impose liability for a civil conspiracy. The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part." Ross v. Conoco, Inc., 2002-0299 (La. 10/15/02), 828 So. 2d 546, 552. The purpose of solidary liability under Article 2324(A) is to compel any tortfeasor to pay an entire judgment. See id.

As argued by QBE, the civil conspiracy claims must be dismissed here because there is no evidence that any defendant entered into an agreement to intentionally and/or willfully cause the crash of the Piper. Louisiana law requires that the actors involved in the conspiracy must agree ***as to the intended outcome or result of their acts***. See Walker, 640 So. 2d at 797 (emphasis added). While there may have been some type of agreement amongst Defendants to save money on the cost of their aviation venture, the record is devoid of any evidence that there was an agreement to cause the plane crash. The civil conspiracy claims are therefore **DISMISSED**.

### III.     Standard for Resolving Insurance Coverage Issues.

There is no dispute that Louisiana substantive law applies. Under Louisiana law, the interpretation of an insurance policy usually involves a legal question, and whether an insurance policy provides or precludes coverage is a dispute that can be resolved on a motion for summary judgment. See Huggins v. Gerry Lane Enterprises, Inc., 2006-2816 (La. 05/22/07), 957 So.2d 127, 129. However, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." Elliott v. Continental Casualty Co., 2006-1505 (La. 02/22/07), 949 So.2d 1247, 1253.

Under Louisiana law, insurance policies are contracts between the insured and the insurer and are construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. See Huggins, 957 So.2d at 129. Therefore, the interpretation of a contract requires the determination of the parties' common intent. See La. C.C. Art. 2045. In other words, the "parties' intent as reflected by the words in the policy determine

the extent of coverage." Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994). If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." Cadwallader v. Allstate Ins. Co., 2002-1637 (La. 06/27/03), 848 So.2d 577, 580. Consistently, when the terms used in a contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the parties' intent. See La. C.C. Art. 2046. If the policy contains ambiguous provisions, however, the ambiguous provisions "are generally construed against the insurer and in favor of coverage." Cadwallader, 848 So.2d at 580; see also La. C.C. Art. 2056. A policy provision is ambiguous if it is susceptible to two or more reasonable interpretations. See Cadwallader, 848 So.2d at 580. The determination of whether a contract is clear or ambiguous is a question of law. See Sims v. Mulhearn Funeral Home, Inc., 2007-0054 (La. 05/22/07), 956 So.2d 583, 590.

The words used in a contract must be given their plain, ordinary, and generally prevailing meaning. See Huggins, 957 So.2d at 129; see also La. C.C. Art. 2047. If the contract involves a technical matter, however, terms of art and technical terms must be given their technical meanings. See La. C.C. Art. 2047. The provisions of the contract must be interpreted in light of each other so that each provision is given the meaning suggested by the contract as a whole. See La. C.C. Art. 2050. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." Huggins, 957 So.2d at 129; Carrier v. Reliance Ins. Co., 1999-2573 (La. 04/11/00), 759 So.2d 37, 43.

Insurers "have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La. 1994). "Any exclusion from coverage in an insurance policy must be clear and unmistakable." Duncan v. U.S.A.A. Ins. Co., 2006-363 (La. 11/29/06), 950 So.2d 544, 547. The party seeking coverage under an insurance policy has the burden of proving the existence of the policy and proving that the policy affords coverage for the subject incident. See Jones v. Est. of Santiago, 2003-1424 (La. 04/14/04), 870 So.2d 1002, 1010. This often requires a party to prove one or more facts. Indeed, "Louisiana law . . . places the burden on the [insured] to establish every fact essential to recovery and to establish that the claim falls within the policy coverage." Bayle v. Allstate Ins. Co., 615 F.3d 350, 362 (5th Cir. 2010), quoting Ho v. State Farm Mut. Auto Ins. Co., 2003-0480 (La. App. 3 Cir. 12/31/03), 862 So.2d 1278, 1281. Moreover, liability insurance policies should be interpreted to effect rather than to deny coverage. See Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., 2006-1827 (La. 5/22/07), 958 So.2d 634, 638. Finally, the "test for construing an insurance policy is not what the insurer intended the words to mean, but how the words would have been understood by a reasonable person in the shoes of the insured." Pathology Laboratory Inc. v. Mt. Hawley Ins. Co., 552 F.Supp.3d 617, 626 (W.D. La. 2021), quoting Dawson Farms, LLC v. Millers Mutual Fire Ins. Co., 34,801 (La. App. 2 Cir. 08/01/01), 794 So.2d 949, 952, writ denied, 803 So.2d 34 (La. 12/07/01), writ denied, 803 So.2d 37 (La. 12/07/01).

IV.     **Analysis.**

QBE seeks summary judgment declaring a lack of coverage, arguing that the Cross-Claimants cannot show any genuine issue of material fact to establish they will satisfy their burden of proving coverage under the QBE insurance policy. While it is true that the Cross-Claimants bear the burden of proving the QBE policy affords coverage, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is ***no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded***." Elliott, 949 So.2d at 1253 (emphasis added). Here, there are factual disputes and credibility issues preventing this Court from definitively stating, at this stage, that there is no reasonable interpretation of the policy which could afford coverage.

The Court's analysis must begin with the allegation of the Cross-Claimants that the Defendants, including the QBE Named Insureds, are jointly and solidarily liable based on the single business enterprise doctrine. Again, the QBE Named Insureds are RRCo Aircraft, Robert Gagnard, and Rodney Savoy. If any of these named insureds are found liable at trial – under any theory of liability including the single business enterprise doctrine – there could be coverage under the QBE Policy. In a previous ruling, this Court denied Rodney Savoy's summary judgment motion on the issues of personal liability as a member of certain LLCs for breaching fiduciary duties and/or committing fraud and/or negligent or wrongful acts; personal liability under the single business enterprise theory; and liability under the alter ego doctrine, holding:

> Cross-Claimants have gone beyond the pleadings and designated specific facts showing there is a genuine issue for trial as to whether the LLCs at

10

> issue were properly created and managed and the applicability of both the alter ego doctrine and single business enterprise theory. While Savoy submits that he always acted solely in his official corporate capacity, Cross-Claimants have presented competent summary judgment evidence, including deposition testimony from Savoy himself, that could lead a factfinder to conclude that Savoy personally engaged and participated in – and furthered – the Cheyenne Partners Enterprise to satisfy his personal aircraft needs. Likewise, there is a fact issue surrounding whether Savoy used his personal resources to ensure that Cheyenne Partners Enterprise operated to his personal benefit.

Record Document 775 at 5. The Court further noted that the determination of whether the single business enterprise doctrine applies is a question of fact. See id. at 5 n. 1. Given the aviation business venture between Charles "Chuck" Vincent and Rodney Savoy involving the shared use of the Piper and noting the close affiliation of all of the entities named as Defendants, the credibility and fact issues relating to Rodney Savoy are directly intertwined with the factual determination of whether the Coverage 2 and Coverage 4 policy provisions apply: did the crash arise out of the use of the non-owned aircraft on behalf of a named insured such as RRCo Aircraft or Rodney Savoy and/or did the crash arise out of a named insured's arrangement for use of the non-owned aircraft by and on behalf of another person or organization? Additionally, the QBE Policy expanded coverage beyond the scheduled King Air aircraft. As this Court noted in another previous ruling, there appears to be no viable reason other than the shared use of the Piper for QBE to have issued, and for the insureds to have purchased, insurance that expands coverage beyond the aircraft scheduled in the QBE Policy. See Record Document 449 at 20-21. Considering all of these issues and given that liability insurance policies should be interpreted to effect rather than to deny coverage, this Court hereby **DEFERS** the issue of coverage under the QBE policy until such time as factual disputes, issues of credibility, and the single business enterprise determination have been resolved. Counsel shall be

11

prepared to discuss this lingering coverage issue at the pretrial conference set for Monday, March 20, 2023.

## CONCLUSION

For the reasons set forth above, QBE's Motion for Partial Summary Judgment on "Conspiracy" Claims Pursuant to Civil Code Article 2324 is **GRANTED** and QBE's Motion for Summary Judgment as to coverage is **DEFERRED** to trial or – if necessary – to additional post-trial motion practice.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of March, 2023.

_____
United States District Judge